TERRENCE J. EDWARDS (Utah State Bar No. 9166)

**TECHLAW VENTURES, PLLC**
3290 West Mayflower Ave.
Lehi, Utah 84043
Telephone: (801) 854-7675
Facsimile: (801) 852-8203
terrence@techlawventures.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | | |
|---|---|---|
| LIFE SCIENCE INSTITUTE, LLC. | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | **(Jury Trial Demanded)** |
| | ) | |
| v. | ) | |
| | ) | |
| KNOTTED INDUSTRIES, LLC | ) | Civil No. 2:24-cv-00687 |
| | ) | |
| Defendant. | ) | |

Plaintiff Life Science Institute, LLC ("Life Science" or "Plaintiff"), by and through its attorneys, hereby alleges for its Complaint against Knotted Industries, LLC ("Defendant"), on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for damages and for injunctive relief arising out of Defendant's unlawful business enterprise that defrauds Life Science and its customers and willfully infringes

Life Science's incontestable federal trademarks and other rights related to Life Science's dietary supplement products that are marketed and sold under Life Science's HEALTHYCELL brand.

2. As set forth in greater detail below, Defendant is engaged in, and knowingly facilitates and encourages others to engage in, unlawful business practices involving the unauthorized and unlawful resale and distribution of Life Science's HEALTHYCELL products in order to defraud Life Science's customers under Life Science's HEALTHYCELL brand, and other violations of federal law.

## PARTIES

3. Plaintiff is a Delaware limited liability company with a place of business at 3301 Salterbeck Street, Ste 102 Mount Pleasant, SC 29466. Plaintiff is a well-known manufacturer of dietary supplements.

4. Upon information and belief, Defendant Knotted Industries, LLC is a Utah limited liability company with a principal place of business at 1920 S 200 E Clearfield, Utah 84015.

5. All conditions precedent to filing this action have been performed, waived or excused.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction over the claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction), 15 U.S.C. § 1121(a) (trademark jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

7. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant maintains continuous and systematic contacts within the state, maintains

warehouses and/or distribution centers within this state, derives substantial revenue from the state, and has committed acts giving rise to this action within Utah and within this District.

8. The exercise of personal jurisdiction comports with Defendant's right to due process, because it has purposefully availed itself of the privilege of conducting activities within the District of Utah, such that it should reasonably anticipate being hauled into court here.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1400, at least because Defendant resides within this District.

## LIFE SCIENCE'S BRAND RECOGNITION

10. Life Science has been promoting and selling its dietary supplements in the United States for over ten years and has used and continues to use its trademarks in commerce including the mark HEALTHYCELL to promote and sell its products.

11. Life Science owns incontestable United States Trademark Registration No. 4,569,650 for HEALTHYCELL, used in connection with nutraceuticals for use as a dietary supplement in International Class 005 issued on July 15, 2014, and based on the first use date of February 12, 2014 (the "HEALTHYCELL Registration" for the "HEALTHYCELL Mark").

12. The HEALTHYCELL Registration constitutes the lawful, valued, subsisting and exclusive property of Life Science, and as a result of the high quality of Life Science's products, services, sales, promotion and advertising thereof, the HEALTHYCELL Mark has become an intrinsic and essential part of the valuable goodwill and property of Life Science. The HEALTHYCELL Mark is well known and established to customers and the trade as a symbol identifying and distinguishing Life Science's distinctive products of exceptional quality.

13. Life Science has used the HEALTHYCELL Mark in connection with nutraceuticals for use as a dietary supplement (the "HEALTHYCELL Products") since at least as

early as February 12, 2014. An exemplary image of one of the HEALTHYCELL Products, bearing the HEALTHYCELL Mark, is reproduced below:




14. The HEALTHYCELL Mark is well known and established to customers. It is inherently distinctive and has acquired a high degree of fame in the minds of U.S. consumers through consistent use for over a decade, widespread and substantial advertisement and promotion by Life Science, and tremendous commercial success of its HEALTHYCELL Products nationwide. Customers throughout the United States recognize the HEALTHYCELL Mark as representative of the high quality HEALTHYCELL Products sold by Life Science. A true and correct copy of the HEALTHYCELL Registration is attached hereto as Exhibit A.

15. Life Science devotes substantial effort and resources to ensure that its HEALTHYCELL Products are based on the preferences of its consumers, are safe to consumers, and comply with U.S. laws and regulations. Before the distribution and sale of those products, Life Science continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues.

16. Life Science sells its HEALTHYCELL Products directly to retailers and through a network of authorized distributors that distribute HEALTHYCELL Products throughout the United States. Each of these distributors separately enters into a contractual agreement with Life Science in order to distribute HEALTHYCELL Products.

17. These agreements provide Life Science's authorized distributors with certain rights and benefits including the ability to sell HEALTHYCELL Products on their websites. By carefully evaluating and negotiating with its authorized distributors, Life Science ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with HEALTHYCELL Products. Where Life Science's distributors fail to provide high-quality services that Life Science expects, Life Science may take corrective measures.

18. Life Science's sale of its HEALTHYCELL Products has been tremendously successful because of its efforts to ensure the high quality of those products, as well as its substantial investment in the marketing and promotion of HEALTHYCELL Products to consumers.

## DEFENDANT'S INFRINGING ACTIVITIES

19. Defendant describes itself as a hub for top-tier brands across multiple industries including supplements, health essentials, knives, office solutions, and auto parts.

20. Among the brands that Defendant sells are HEALTHYCELL Products manufactured by Life Science (the "Infringing Products").

21. Life Science has not authorized Defendant to distribute or sell HEALTHYCELL Products in the United States. Life Science also has not authorized Defendant to use the HEALTHYCELL Mark in the United States in any manner.

22. Nevertheless, Defendant is in the business of acquiring HEALTHYCELL Products manufactured by Life Science and distributing and selling them to retailers and other customers without Life Science's consent.

23. The Infringing Products that Defendant sells include, Healthycell Heart & Vascular Health Supplement, Healthycell REM Sleep Supplement, and Healthycell Bioactive Multi Supplement.

24. Defendant regularly markets these Infringing Products to customers through its Amazon storefront, where a number of these products are available for purchase and shipment in the U.S. It is apparent from the product images on its Amazon storefront that Defendant is advertising these Infringing Products for sale using the HEALTHYCELL Mark.

25. Life Science does not permit its authorized resellers to sell products on third-party-facilitated sites such as Amazon.com or eBay.

26. The Infringing Products that are distributed by Defendant are materially different from the corresponding HEALTHYCELL Products marketed under the same brand.

27. Life Science offers a number of post-sale services for the HEALTHYCELL Products, including returns, refunds, and customer service.

28. Life Science allows returns and or refunds of certain HEALTHYCELL Products only if *authorized* retailers and/or customers are dissatisfied with those products, or if the products have been spoiled or damaged.

29. However, because Life Science never distributed or authorized the distribution of the Infringing Products being distributed by Defendant, retailers and customers who purchase those products will not be able to return them to Life Science or receive a refund, damaging the customer perception of Life Science and the HEALTHYCELL Mark.

30. Retailers and consumers who have purchased HEALTHYCELL Products may contact Life Science's customer service staff to address any concern that they have about their HEALTHYCELL Products, and Life Science's customer service staff can address those concerns. However, Life Science's customer service staff cannot address concerns that retailers and consumers raise about the Infringing Products that they have purchased, as Life Science was not involved in the Infringing Products distribution or sale.

31. By providing these post-sale services for the HEALTHYCELL Products, Life Science builds goodwill for itself, the HEALTHYCELL Products, and the HEALTHYCELL Marks in the United States. However, purchasers of the Infringing Products cannot enjoy those services, thereby diminishing the goodwill of the HEALTHYCELL Mark.

32. Retailers and consumers have purchased the Infringing Products sold and distributed by Defendant under the mistaken belief that those products are HEALTHYCELL Products, and/or that the distribution and sale of those products are associated with Life Science. As a result, those retailers and consumers have purchased

materially different products, products that lack the post-sale services that they were expecting, from the ones they believed they were purchasing.

33. This consumer confusion and resulting damage to Life Science and the goodwill associated with the HEALTHYCELL Mark is likely to continue if Defendant's infringing activities are not stopped. This has harmed and continues to harm Life Science's goodwill and reputation, and the goodwill associated with the HEALTHYCELL Mark in the United States, resulting in enormous harm and damages to Life Science.

34. Further, by circumventing legitimate distribution channels and quality control procedures, and by failing to provide the services that Life Science and its legitimate distributors provide to retailers and customers, in many instances Defendant has been able to offer artificially low prices for the Infringing Products intended for distribution and sale in the United States. As a result, some consumers have purchased the Infringing Products sold by Defendant, rather than genuine HEALTHYCELL Products.

35. These transactions have resulted in and will continue to result in substantial losses to Life Science and its authorized distributors, disruptions to Life Science's business relationships with its customers and the rights that Life Science has granted to its authorized distributors. This harm to Life Science, its business partners, and consumers will continue if Defendant's infringement activities are not stopped.

36. On July 10, 2024, the undersigned sent a letter to the Defendant notifying them of Life Science's ownership of the HEALTHYCELL Mark, their infringement of the same, and requesting that they immediately cease and desist from their unlawful conduct.

37. Defendant has ignored this correspondence and has continued to engage in their unlawful conduct despite knowing that they are infringing upon Life Science's rights to the HEALTHYCELL Mark.

**COUNT I:**
**FEDERAL TRADEMARK INFRINGEMENT UNDER § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114**

38. Life Science re-alleges and incorporates the allegations in paragraphs 1 to 37 above as if fully set forth herein.

39. Defendant's aforementioned conduct constitutes use of the HEALTHYCELL Mark without authorization in connection with their unauthorized sale and distribution of the Infringing Products.

40. Defendant's use of the HEALTHYCELL Mark in connection with the sale of the Infringing Products has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source or origin of the Infringing Products, and the relationship between Life Science and the Defendant.

41. Defendant's use of the HEALTHYCELL Mark in connection with the Infringing Products has caused actual confusion as to the source of origin of the Infringing Products, and the relationship between Life Science and the Defendant.

42. Defendant's unauthorized use of the HEALTHYCELL Mark is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Life Science.

43. Defendant's use of the HEALTHYCELL Mark in connection with the sale of Infringing Products constitutes a misappropriation of Life Science's distinguishing and

identifying HEALTHYCELL Mark which was created as a result of effort and expense by Life Science over at least the last decade.

44. Defendant's use of the HEALTHYCELL Mark evokes an immediate, favorable impression or association and constitutes a false representation that the products, services and business of Defendant has some connection, association, or affiliation with Life Science, and thus constitutes false designation of origin.

45. Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage, Life Science and the reputation and goodwill of Life Science.

46. Defendant has been unjustly enriched and will continue to unjustly enrich themselves at the expense of Life Science. Life Science is without an adequate remedy at law to redress such acts and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

47. Defendant's aforesaid acts constitute willful infringement of Life Science's federally registered trademarks in violation of 15 U.S.C. § 1114.

**COUNT II:**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

48. Life Science re-alleges and incorporates the allegations set forth in paragraphs 1 to 47 above as if fully set forth herein.

49. Life Science owns all rights, title, and interest in and to the HEALTHYCELL Mark and has an exclusive right to use the HEALTHYCELL Mark in connection with HEALTHYCELL Products.

50. Defendant has, without authorization, distributed and sold the Infringing Products featuring the HEALTHYCELL Mark, which are materially different from the HEALTHYCELL Products authorized for sale by Life Science.

51. Defendant's acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Life Science, and its origin, sponsorship, and/or approval of the Infringing Products, in that purchasers are likely to believe Life Science authorizes and controls the sale of the Infringing Products, or that Defendant is associated with, related to Life Science, or is authorized by Life Science to distribute or sell the Infringing Products.

52. Defendant's unauthorized distribution and sale of the Infringing Products bearing the HEALTHYCELL Mark that are materially different from HEALTHYCELL Products sold by Life Science places the nature and quality of products bearing the HEALTHYCELL Mark beyond the control of Life Science and deprives Life Science of the ability to control the same.

53. Defendant's acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion mistake, and deception as to the affiliation, connection, or association of Defendant with Life Science, and as to the origin, sponsorship, and/or approval of the Infringing Products, in that purchasers and others are likely to believe Life Science authorizes and controls the sale of the Infringing Products, or that Defendant is associated with or is authorized by Life Science to distribute or sell products bearing the HEALTHCELL Mark.

54. Defendant's acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of Life Science's exclusive rights and good will in the HEALTHYCELL Mark, and with knowledge of the infringing nature of the marks when used in connection with the Infringing Products. Defendant's acts have been committed in bad faith and the intent to cause confusion or mistake and/or to deceive retailers and consumers.

55. Defendant had actual and constructive knowledge of Life Science's superior rights in and to the HEALTHYCELL Mark prior to Defendant's adoption and use of the HEALTHYCELL Mark, and Defendant continues to use the HEALTHYCELL Mark with actual knowledge of infringing conduct.

56. Life Science has not consented to Defendant's use of the HEALTHYCELL Mark for any purpose, and Life Science has not consented to the sale of the Infringing Products bearing the HEALTHYCELL Mark.

57. Defendant, in committing the wrongful acts of unfair competition, Life Science has suffered injury and damage, in an amount to be proven at trial by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the HEALTHYCELL Mark, and a loss of sales and/or market share, among other reasons.

58. By reason of Defendant's wrongful acts of unfair competition, Life Science has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the HEALTHYCELL Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

59. If not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their wrongful acts of unfair competition.

60. By reason of the foregoing, Life Science is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the Infringing Products to be destroyed pursuant to 15 U.S.C. § 1118, and to actual damages, treble damages, disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

**COUNT III:**
**FALSE ADVERTISING**

61. Life Science re-alleges and incorporates the allegations in paragraphs 1 to 60 above as if fully set forth herein.

62. Defendant has publicly advertised for sale the Infringing Products.

63. Defendant knew, or reasonably should have known, that the Infringing Products that it advertises are materially different from the corresponding HEALTHYCELL Products. These differences include that the Infringing Products are not subject to Life Science's quality control standards and post-sale services.

64. Defendant knew, or reasonably should have known, that it is not the owner of the HEALTHYCELL Mark, that Life Science has not authorized Defendant to sell HEALTHYCELL Products, and that Life Science does not control, supervise, or otherwise endorse the Infringing Products.

65. Defendant knew, or reasonably should have known, that by advertising the Infringing Products that are substantially identical in appearance to their corresponding HALTHYCELL Products, consumers were likely to be misled and deceived into believing

that the Infringing Products are subject to Life Science's control, supervision, and endorsement.

66. Defendant also knew, or reasonably should have known, that consumers were likely to be deceived into believing that the Infringing Products are subject to Life Science's quality control standards and post-sale services.

67. As a result of Defendant's advertising the Infringing Products, Life Science has suffered substantial and irreparable economic loss, including: (a) lost sales, revenue, market share, and asset value; (b) a diminution in the value of Life Science's contracts with its authorized distributors of HEALTHYCELL Products; (c) customer dissatisfaction; and (d) a diminution of the value of the goodwill associated with the HEALTHYCELL Marks.

68. As a result of the Defendant's wrongful conduct, Life Science is entitled to, among other relief, an order enjoining and restraining Defendant from advertising and selling Infringing Products and restoring to Life Science funds that were wrongfully collected by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Life Science prays for judgment against the Defendant as follows:

A. Judgment in favor of Life Science and against Defendant on all of Life Science's claims;

B. Preliminary and permanent injunctive relief against the Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them, from doing any of the following acts, either

directly or indirectly:

a. Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the HEALTHYCELL Mark.

b. Using the HEALTHYCELL Mark or any other trademark owned by Life Science.

c. Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the HEALTHYCELL Products or any other products manufactured, distributed, or sold by Life Science and/or that bears the HEALTHYCELL Mark; and

d. Any acts of unfair competition or unfair practice affecting Life Science, the HEALTHYCELL Products, or any other products manufacture, distributed, or sold by Life Science and/or that bear the HEALTHYCELL Mark.

C. For an order directing Defendant to file with this Court and serve on Life Science within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

D. For an order to destroy the Infringing Products or any other products bearing the HEALTHYCELL Marks in possession of Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

E. For an order seizing the Infringing Products or any other products bearing the HEALTHYCELL Marks in possession of Defendant and its officers, agents,

servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

F. For an accounting and disgorgement of all of Defendant's profits resulting from its sale of the Infringing Products and any other products bearing the HEALTHYCELL Mark;

G. For an order awarding Life Science damages in an amount to be determined, as well as compensatory, consequential, statutory, special, treble and punitive damages, prejudgment and post-judgment interest on its damages award, and Life Science's reasonable attorneys' fees and costs of suit;

H. Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment, Life Science demands a trial by jury on all claims and issues so triable.

Dated: September 18, 2024

Life Science Institute, LLC

/s/ Terrence J. Edwards
Terrence J. Edwards
TechLaw Ventures, PLLC
3290 W. Mayflower Ave.
Lehi, Utah 84043
801.854.7675
terrence@techlawventures.com

*Attorneys for Life Science Institute, LLC*